**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MAX BLUMENTHAL,

*Plaintiff*,

v.

MARKWAYNE MULLIN, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY,

*Defendant.*

Case No. 1:26-mc-00016

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL DECLARATION

Plaintiff, Max Blumenthal, respectfully submits this response to the Declaration of Dameil Mason (ECF No. 19-1) (the "Mason Declaration"), filed on August 12, 2026, pursuant to the Court's instruction to Defendant to provide additional evidence about what, precisely, the government did with Plaintiff's smartphones, which were seized by Customs and Border Patrol (CBP) at Dulles airport. As explained below, the Mason Declaration does not resolve the paucities identified by the Court, possibly even raising more questions than it answers. This confirms that limited discovery is necessary before the matter can be resolved.

## FACTUAL BACKGROUND

Plaintiff is an independent journalist internationally recognized for work that challenges U.S. foreign policy. *See* Fed. R. Crim. P. 41(g) Motion at 2-3, *Blumenthal v. Mullin*, No. 1:26-mc-00016 (E.D. Va. July 16, 2026), Dkt. 2. On July 10, 2026, his two smartphones were seized by CBP officers at Dulles International Airport in Virginia when he was returning from Iran, where he had traveled to cover the funeral of the Ayatollah Khomeini. *Id.* at 3.

The day after Plaintiff filed his motion, CBP called him, offering to return his phones, which he picked up later that evening. *See* Reply Br. at 2, *Blumenthal v. Mullin*, No. 1:26-mc-00016 (E.D. Va. July 28, 2026), Dkt. 15. Pursuant to the Court's order, on July 27, 2026, Defendant submitted a response memorandum, supported by a declaration from a Chief CBP officer. Fed. R. Crim. P. 41(g) Motion at 2-3, *Blumenthal v. Mullin*, No. 1:26-mc-00016 (E.D. Va. July 27, 2026), Dkts. 13, 13-1. The government claimed that because CBP was unable to gain access to Plaintiff's phones and thereby did not recover any data—although such access was attempted—the matter was moot. *See id.* Plaintiff filed a reply arguing that more information was needed, including what forensic tools or techniques were used to recover data; whether forensic images had been created or photographs taken; whether any technology had been implanted to provide for ongoing surveillance or location tracking; and what records had been maintained that documented these efforts. *See* Reply Br. at 3, Dkt. 15.

At the July 29, 2026 hearing, the Court—recognizing that the forensic search (or attempted forensic search) of Plaintiff's phones raised Fourth Amendment concerns—identified three deficiencies in the evidence submitted by Defendant in support of his contention that no data had been extracted from Plaintiff's phones. Those specific gaps were the absence of: (1) a basis of the declarant's knowledge; (2) information about the particular individuals who handled Plaintiff's phones; and (3) the nature and extent of the attempts to obtain data from the phones. Hearing Transcript at 5, 8, *Blumenthal v. Mullin*, No. 1:26-mc-00016 (Jul. 29, 2026). The Court indicated limited discovery was warranted, but at the government's request agreed to permit Defendant to file a more detailed declaration documenting what happened to the phone. *Id.* at 7-8.

Defendant submitted the two-page Mason Declaration on August 12, 2026, pursuant to the Court's directive. According to the declaration, Mr. Mason is Supervisory Lead for a DHS team

of certified digital forensic analysis (DFAs). *See* Mason Declaration, ECF 19-1 ¶ 1. In this capacity, he oversees the work of DFAs who provide technical assistance with advanced searches at DHS's request. *Id.* ¶ 2. Mr. Mason was the supervisor of the DFA who unsuccessfully attempted to access the contents of Plaintiff's phones. *Id.* ¶ 3. The DFA whom Mr. Mason oversaw connected the phones to "technology that DHS utilizes when attempting an advanced search." *Id.* ¶ 6. Mr. Mason further submits that the technology was unable to access data from the phones, so it did not copy any information from them. *Id.* ¶ 6. He attests that no surveillance technology or computer codes were installed on either of the phones. *Id.* ¶ 7.

## ARGUMENT

### I. THE DECLARATION STILL DOES NOT ESTABLISH MR. MASON'S BASIS OF KNOWLEDGE

Mr. Mason's supplemental declaration does little more than the original declaration to establish the declarant's basis of knowledge. While Mr. Mason claims to have "personal knowledge" based on his duties, training, and experience, it is clear from the Declaration that is a conclusory assertion and that he did not personally handle the phones. *Id.* ¶ 4.

Mr. Mason does not claim to have observed the search. Nor does he identify the officer or officers who conducted the search. He does not say that he even spoke with the officer or officers who performed the search, or that he reviewed a written report or system log. In fact, reading between the lines, it appears possible that Mr. Mason's assertions are simply about the procedure that is generally followed when attempting to conduct such searches, as opposed to describing events of which he had personal knowledge ("Based on the duties of my current position, my training, and my experience as a DFA, I am familiar with and have personal knowledge about the unsuccessful attempt to access the contents of Mr. Blumenthal's devices"). *Id.* ¶ 4.

That is not enough to satisfy the Court's question to defense counsel ("So did you interview people? Was he the one who kept the phones the whole time and he tried to do whatever he tried to do?"), nor the other deficiencies identified above. *See* Hearing Transcript at 9. Moreover, it is curious indeed that, despite the exchange between the Court and defense counsel on this issue, Defendant failed to provide an answer,

## II. The Declaration Does Not Identify Who Handled the Phones

At no point does Mr. Mason identify the individual or individuals who actually conducted the search (or attempted search) of Plaintiff's phones. Without knowing who handled the phones, Plaintiff has no ability to test the accuracy of Mr. Mason's account. In fact, Mr. Mason does not state that only one DFA handled the phones, or that only a DFA did (as opposed to other individuals who are not DFAs). Mr. Mason's declaration does not explicate the number of attempts to access the phone's contents and when they took place. Nor is there an explanation about the type of technology utilized and why it failed. In the absence of such information, it is impossible to test the claims made in the Declaration.

## III. The Declaration Provides No Corroborating Records

Plaintiff raised concerns at the July 29 hearing about the government's failure to provide corroborating evidence of its claims in the form of property logs or chain of custody documentation. *See* Transcript at 6-7. Yet the Mason Declaration attaches none, either—even though the Court offered the option of *in camera* review if Defendant had concerns about sharing such evidence with Plaintiff. *See* Mason Decl.; Transcript at 7. The phones were in the government's possession for seven days, yet Defendant has failed to provide *any* contemporaneous evidence to substantiate his assertions that no data was retrieved from the phones. In fact, Defendant neglects to provide assurances that no information was obtained from the phones that

would allow the government to retrieve data from remote locations such as the cloud, despite counsel raising concerns about this possibility. Given that this is the sole evidentiary basis on which Defendant asks the Court to find the matter moot, the absence of any documentary corroboration is a significant gap in the evidence. And once again, it is surprising that Defendant did not even attempt to address this deficit given that it was specifically addressed at the hearing.

## IV. THE DECLARATION CONTAINS IMPLAUSIBLE ASSERTIONS

Mr. Blumenthal's July 16, 2026 Declaration stated that his interaction with CBP at Dulles International Airport concluded at approximately 10:30 p.m. on July 10, 2026. *See* Declaration of Max Blumenthal, ECF 2-1¶ 26.

The Mason Declaration did not identify the address for DHS headquarters where Plaintiff's phones were taken. According to public records, there are multiple addresses identified as DHS headquarters and all appear to be located within Washington, D.C. Each one of them is at least 30 miles away from Dulles International Airport in Dulles, Virginia. It is implausible that a DFA at DHS headquarters somewhere in Washinton, DC received Plaintiff's phones on July 10, 2026, as alleged in the Mason Declaration. There was approximately 90 minutes left in the calendar day at the time that Plaintiff left his phones at Dulles International Airport. Presumably, CBP would have had to complete required chain of custody paperwork and transport Plaintiff's phones to DHS headquarters where a DFA would have had to complete additional paperwork reflecting the time and date of receipt. That casts additional doubt on the veracity of Defendant's claims and heightens the need for limited discovery here.

## V. LIMITED DISCOVERY REMAINS NECESSARY

Because the Mason Declaration does not resolve the deficiencies the Court identified, Plaintiff respectfully requests that the Court permit:

1. A short deposition from the DFA or DFAs who actually handled and attempted to search Plaintiff's phones, addressing what was attempted, when, and why the attempt failed;

2. Production — subject to *in camera* review to the extent Defendant maintains a genuine privilege objection — of any property, custody, or system logs reflecting the phones' movement and handling between July 10 and July 17, 2026; reports reflecting instructions to DFAs on what actions should be taken with respect to Plaintiff's phones and reports from DFAs confirming what actions were taken and what data was obtained from Plaintiff's phones, and;

3. Confirmation, consistent with the Court's suggestion at the hearing, that Plaintiff may have an independent expert examine the phones for any indication of tampering or access.

Plaintiff submits that this discovery is narrowly tailored to the specific gaps the Court itself identified and is not the kind of open-ended "fishing expedition" Defendant cautioned against at the hearing. Transcript at 9. Plaintiff remains willing to confer with Defendant regarding a mutually workable discovery schedule and, consistent with the Court's instruction, to report back on that plan.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that the Mason Declaration does not moot this proceeding, and that the limited discovery described above is warranted before the Court determines what, if anything, further is needed.[1]

[1] Yesterday, Plaintiff filed a Complaint for injunctive and declaratory relief based on the same set of facts as this matter. Blumenthal v. Mullin et al, (E.D. Va). That filing does not change the trajectory of this motion and the resulting discovery process.

Dated: August 19, 2026

Respectfully submitted,

/s/ George R. A. Doumar___
George R.A. Doumar, Va. Bar No. 26490
DOUMAR MARTIN, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
(703) 243-3737
gdoumar@doumarmartin.com

Jenin Younes* (*pro hac vice*)
Malak Afaneh (*pro hac vice*)
AMERICAN-ARAB ANTI-
DISCRIMINATION
COMMITTEE
910 17th Street Northwest, Suite 400
Washington, DC 20006
Telephone: (202) 244-2990
jyounes@adc.org
**Designated Counsel for Service*
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was sent by efiling to counsel of record on August 19, 2026.

/s/ George R. A. Doumar
Doumar Martin, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, VA 22209
703-243-3737
gdoumar@doumarmartin.com
dhernandez@doumarmartin.com
*Counsel for Plaintiff*